**UNITED STATES DISTRICT COURT**

                      **DISTRICT OF NEW HAMPSHIRE**


**Lyubov Y. Gorelik**

   **v.**                              Civil No. 08-cv-036-JL
                                       Opinion No. 2008 DNH 217

**Kevin R. Costin**


                            **O R D E R**

    The plaintiff, Lyubov Y. Gorelik, M.D., filed this five count complaint against Kevin R. Costin, in his official capacity as President of the New Hampshire State Board of Medicine,[1] for violating her rights under 42 U.S.C. §1983 (2000) and the First and Fourteenth Amendments.  The plaintiff seeks declaratory and injunctive relief, as well as attorney's fees and costs.  The defendant has filed a motion to dismiss, see Fed. R. Civ. P. 12(b)(2008), contending that: (1) the applicable statute of limitations has expired, (2) the court should abstain under the doctrine set forth in Younger v. Harris, 401 U.S. 37 (1981), (3) the plaintiff has failed to exhaust her state administrative

---

    [1]The defendant, in his pleadings, contends that the President of the Board has changed and questions whether he (or any board president) is the proper party.  He also asserts that the proper party is the full Board that it cannot be sued under § 1983. For purposes of this motion, the court assumes, without deciding, that Costin is the proper party because under any circumstances, the claim is time-barred.

remedies, (4) the defendant is not the proper party, and (5) the plaintiff has failed to state a claim upon which relief can be granted.

This court has jurisdiction under 28 U.S.C. §1331 (2000) (federal question) and 28 U.S.C. §1343 (2000)(civil rights). After a hearing, and for the reasons set forth below, the court grants the defendant's motion to dismiss as the plaintiff's action is time-barred.[2]

I.  **APPLICABLE LEGAL STANDARD**

The argument that a claim is barred by the statute of limitations raises an affirmative defense (not a jurisdictional defect), and it may be considered under Federal Rule of Civil Procedure 12(b)(6).  See, e.g., Edes v. Verizon Comm'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Bergstrom v. Univ. of N.H., 959 F. Supp. 56, 58 (D.N.H. 1996).  When considering a Rule 12(b)(6) motion, the court must take as true all the plaintiff's well-pleaded facts and draw all reasonable inferences arising from them in the plaintiff's favor.  Estate of Bennett v.

---

[2]The parties should not infer that the other grounds for dismissal were without merit.  In particular, even if the plaintiff were to solve the numerous procedural deficiencies with her complaint, the court may have had difficulty finding that some of the substantive claims before it were legally cognizable. See, e.g., infra note 13.

Wainwright, No. 07-2169, slip op. at 10 (1st Cir. November 26, 2008); see, e.g., Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008). Although a complaint "does not need detailed factual allegations," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), this court must reject "unsupported conclusions or interpretations of law," Estate of Bennett, slip op. at 10 (quotations omitted), and the allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp., 127 S. Ct. at 1965.[3] "Put differently," dismissal is appropriate "if the complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face." Gray, 544 F.3d at 324 (quotations omitted); see Estate of Bennett, slip op. at 10 (to survive Rule 12(b)(6) dismissal, a complaint "must possess enough heft to set forth a plausible entitlement to relief" (quotations omitted)).

---

[3]Until recently, the pleading standard for a motion to dismiss set a high bar for the movant, requiring that the complaint be maintained "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45, 46 (1957), abrogated by Bell Atl. Corp., 127 S. Ct. at 1969. In 2007, however, the Supreme Court retired the "no set of facts" formulation in favor of the standard quoted above, which requires more of the nonmovant. Bell Atl. Corp., 127 S. Ct. at 1968-69.

**II.   BACKGROUND**

The plaintiff was accepted to a residency program at the Dartmouth Hitchcock Medical Center, and in June 1997, she applied to the New Hampshire State Board of Medicine for a resident training license to practice medicine in New Hampshire.[4]  Prior to entering the Dartmouth program, the plaintiff had been removed from a residency program at New York Methodist Hospital.  On July 3, 1997, the Board granted the plaintiff a conditional temporary training license "pending completion of [her] institutional appeals process . . . based on removal from [her] previous training program."  (Compl. ¶9.)  In August 1997, the Board issued a newsletter containing, among other items, a list of actions it had taken.[5]  On that list was a notation that it had conditionally approved the plaintiff's license and granted a

---

[4]As required on a motion to dismiss, this court recites the following facts in the light most favorable to the Plaintiff, drawing all reasonably supported inferences in her favor.  See, e.g., Gray, 544 F.3d at 324.

[5]The court notes that the newsletter posting was originally under a heading titled "disciplinary actions."  The Board has since clarified that with respect to the plaintiff, granting of the temporary license was not a "disciplinary action" but is more accurately listed as a "board action."  At the hearing on this matter, both parties agreed that the term "board action" is accurate.  Although the clarification was not made until 2004, the court will use the more accurate term "board action" for purposes of this order except where necessary to describe the relevant events and allegations in the plaintiff's complaint.

4

temporary training license "during appeal of dismissal from a prior training program." The original license was granted for a period of ninety days, and after numerous extensions, it expired on April 15, 1998. The plaintiff did not complete the Dartmouth residency program and her request to renew her temporary license was denied by the Board in June 1998. The plaintiff returned to New York where she completed her training and obtained board certification in psychiatry.

In April 2002,[6] the plaintiff became aware that the newsletter posting treating her temporary license as a "board action" was available on the Board's website.[7] She alleges that internet searches of her name will reveal the 1997 newsletter classifying her temporary license as a disciplinary action.[8] She further alleges that prior to the issuance of the temporary license (and her acceptance of that conditional license), she was not given notice that it was considered by the Board to be an

---

[6]The complaint alleges only that the plaintiff made her discovery "sometime in 2002." For purposes of this motion, the court adopts the date April 2002 from the plaintiff's later pleadings and oral presentation at the hearing on this matter.

[7]The court notes that although it is unclear, it appears from the plaintiff's compliant that only copies of the newsletter posting is available on the website.

[8]Again, the court makes note that the parties agree that the temporary license did not amount to a disciplinary act, but simply a "board action."

action that would be posted publically, or the opportunity to challenge its classification or withdraw her application.

On February 5, 2004, the plaintiff petitioned the Board for a hearing and requested, inter alia, that the Board remove all information about the conditional license from its website and remove any characterization of the temporary license as a disciplinary action.  According to the plaintiff, in June 2004, the Board conditionally agreed to a hearing.  It agreed to remove any notations casting the issuance of the temporary license as a disciplinary act, listing it instead as a "Board Action," but denied her request to remove all prior reference to the order of conditional approval from its website.  Further, according to the plaintiff, the Board determined that June 2004 order itself would be a public record and that any further proceedings would require disclosure of information about her Dartmouth residency and the 1998 denial of her application to renew her license.[9]  On April 1, 2005, the plaintiff withdrew her petition in order to avoid further disclosure.

On February 5, 2008, the plaintiff filed the instant complaint with this court alleging violations under 42 U.S.C.

---

[9]The plaintiff, in her pleading, references only a March 23, 2005 letter to her from her prior counsel advising her of this fact. (Compl. ¶ 42.)

§1983 and the First and Fourteenth Amendments.  Specifically, she asserts that the defendant violated her due process and equal protection rights by: (1) failing to provide notice that granting of a conditional temporary license is considered a disciplinary action and would be published as such (Count I), (2) characterizing issuance of her conditional temporary license as a disciplinary act although it is not generally characterized as such for others (Count II), (3) failing to provide notice and an opportunity to be heard prior to treating her conditional temporary license as a disciplinary act (Count III), and (4) failing to provide notice and an opportunity to refuse acceptance of a conditional temporary license that would be characterized as a disciplinary act (Count IV).  She further asserts that the defendant violated her First Amendment rights by threatening to retaliate against her (in the form of public disclosure about the hearing) for petitioning the Board for relief (Count V).

### III. ANALYSIS

The court grants the defendant's motion to dismiss Counts I-IV on the basis that the complaint is untimely.[10]  Section 1983

---

[10]The court also grants the motion with respect to Count V, but on the basis that it is too speculative, see Bell Atl. Corp., 127 S. Ct. at 1965, and is not plausible on its face.  See Estate of Bennett, slip op. at 10.  Establishing a First Amendment

does not include its own limitations period, and in the absence of a federal limitations provision governing a federal cause of action, courts first look to the most analogous state statute of limitations.  Cf. Edes, 417 F.3d at 138.  "The limitation period applicable to a section 1983 claim is to be found in the general personal injury statute of the jurisdiction in which the claim arises."  Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991); see, e.g., Wilson v. Garcia, 471 U.S. 261, 276-80 (1985)(state law limitation period, tolling and revival

---

retaliation claim necessitates a showing that the plaintiff's protected conduct was a substantial factor driving the board's decision.  See Centro Medico del Turabo v. Feliciano de Medico, 406 F.3d 1, 10 (1st Cir. 2005). Although the court must give the plaintiff the benefit of all reasonable inferences which can be drawn from her allegations, the possibility that advice from counsel that the proposed Board hearing would be a matter of public record amounted to retaliation is simply too far fetched to support her claim in light of the other facts set forth in the complaint.  See Papasan v. Allain, 478 U.S. 265, 286  (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); cf. Barrington Cove Ltd. P'ship  v. R.I. Hous. and Mortg. Finance Corp., 246 F.3d 1, 11 (1st Cir. 2001)(Rule 12(b)(6) dismissal appropriate where agency director's comments did not support evidence of malice); Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995).

"Mere broad conclusory allegations of wrongdoing in the complaint are not a substitute for meaningful factual context." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 42 (1st Cir. 1992).  Here, the plaintiff cannot manufacture retaliatory motive from her own counsel's letter advising her of the consequences of a Board hearing.

provisions apply)(later overruled on a limited basis as it applies to federal laws not applicable here); Moran Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008)(section 1983 borrows the limitations period from state law).  In this case, the applicable limitations period is New Hampshire's three-year statute for personal actions.  See N.H. Rev. Stat. Ann. 508:4 (1997).

"Although the limitations period is determined by state law, the date of accrual is a federal law question." Greenwood v. N.H. Pub. Util. Comm'n, 527 F.3d 8, 14 (1st Cir. 2008)(quotations omitted).  An action accrues when a "plaintiff has a complete and present cause of action." Id. (Quotations omitted.) It is well-settled that

> Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt.

Moran Vega, 537 F.3d at 20 (quotations, citations, and emphasis omitted).

In this case, the plaintiff filed this federal action well outside the three-year limitations period.  All of the acts complained of in Counts I through IV occurred in 1997, the year that the Board granted her conditional license and published the newsletter.  The plaintiff knew or should have known of the

9

unique nature of her licence by the mere fact of its "conditional" and "temporary" nature and that she was required to provide additional information to the Board and re-apply on a regular basis.  Further, First Circuit precedent in the discrimination context makes clear that accrual begins "at the first discrete act," Marrero-Gutierrez v. Molina, 491 F.3d 1, 6 (1st Cir. 2007), which in this case would be the issuance of a temporary conditional licence and the 1997 publication of the newsletter.  Further, the court of appeals has specifically rejected, on more than one occasion, a plaintiff's contention that a cause of action can exist in "a state of suspended animation" until discovery by the plaintiff.  Id.; see, e.g., Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 69 (1st Cir. 2005)(section 1983 claim involving unlawful taking of property accrued on date of wrongful appropriation).[11]

---

[11] Even assuming that the action did not accrue until the plaintiff's discovery of the newsletter in 2002, the case, filed in February 2008, is still untimely.  This is true even if the court assumes further, without deciding, that the limitations period was tolled during the pendency of the plaintiff's aborted petition before the Board.  See Moran Vega, 537 F.3d at 21 (state law governs the applicable tolling principles); Dobe v. Comm'r, 147 N.H. 458 461-62 (2002) (limitations period not tolled during pendency of an administrative proceeding that is a prerequisite to pursuit of the civil action).  Thus, even with benefit of the legal doubt, the plaintiff's action is still untimely because she waited 22 months after discovering the newsletter to file her petition with the Board, and 34 months after her petition was withdrawn before filing suit.

The plaintiff contends that her action is timely because the newsletter remains accessible during an internet search of her name, and this constitutes a "continuing violation" that puts her action within the limitations period.  "The continuing violation doctrine creates an equitable exception to the [limitations period] when the unlawful behavior is deemed ongoing." Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998)(partially overruled on other grounds, see Crowley v. L.L. Bean, Inc., 303 F.3d 387 (1st Cir. 2002)).  This narrow doctrine allows a plaintiff to recover for wrongful acts occurring after the statute of limitations has run.  Perez-Sanchez v. Pub. Hous. Auth., 531 F.3d 104, 107 (1st Cir. 2008).

> This is a limited doctrine, however, and
>
> it does not allow a plaintiff to avoid filing suit so long as some person continues to violate [her] rights. The 'continuing violation' doctrine is misnamed.  The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought.

 Id. (Ellipses omitted.) Thus, it is not a continuing violation where the plaintiff suffers continuing harmful effects from an original unlawful act.  See, e.g., id.; Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991); see also, Muniz-Rivera v. United States, 204 F. Supp.2d 305, 315 (D.P.R. 2002)(collecting cases). Courts must be careful, therefore, to differentiate between a

11

discrete harmful act and "the ongoing injuries which are the natural, if bitter, fruit of such acts." Gilbert, 932 F.2d at 58 (quotations omitted).[12]

The plaintiff contends that there is a continuing violation because the Board's 1997 newsletter continues to be accessible on the internet when her name is searched.  This court disagrees.  Her complaint is focused on discrete acts by the Board in 1997, namely, the issuance of the conditional temporary license and publishing of the newsletter.  The fact that records of the Board's acts can still be accessed by the public on the internet

---

[12] Both parties assume that the continuing violation doctrine applies outside the federal employment context.  Where federal civil actions are subject to state statutes of limitations, state law generally governs the determination of whether this equitable exception applies.  See Rodriguez Navarez v. Nazario, 895 F.2d 38, 42 (1st Cir. 1990); cf. Edes, 417 F.3d at 139-140 n.8.  Until recently, the applicability of the doctrine in New Hampshire was in question.  Cf. Pierce v. Metro. Life Ins. Co., 307 F. Supp.2d 325, 328 n.2 (D.N.H. 2004) (noting that at the time, the continuing violation doctrine did not apply because the New Hampshire Supreme Court had "shown no inclination to incorporate the doctrine as an exception to the state's general statutes of limitation." (quotation and brackets omitted)). Recently, however, the New Hampshire Supreme Court indicated its willingness to consider the doctrine's applicability in tort, see Singer Asset Finance Co., LLC v. Wyner, 156 N.H. 468, 478 (2007)(tortious interference), and noted with approval the general rule that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Id. (Quotations omitted.)  The court thus assumes for the sake of argument, without deciding, that it is applicable, cf. Edes, 417 F.3d at 139 (assuming applicability in the ERISA context), and concludes that the plaintiff has not sufficiently alleged a continuing tort.

does not constitute a continuing tort, but rather the continuing effects of an alleged harm.[13]  The plaintiff cannot succeed because, like many plaintiffs, she "obfuscates what [the First Circuit Court of Appeals has] termed the critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake."  Johnson, 943 F.2d at 108 (quotations omitted).[14]

---

[13]The Plaintiff attempts to establish "continuing harm" by characterizing as "republishing" each time the public accesses the archived newsletter through an internet search.  (See Compl. ¶¶ 20, 29.)  When viewed in the context of the specific facts of this case as pleaded in the complaint and explained at oral argument, this act, initiated by a member of the public, cannot be fairly described as "republishing" by the Board; it is merely a "re-accessing" of information by an unrelated individual.  Thus, under these facts and circumstances, it cannot constitute a new discrete injury.  It is simply an unfortunate continuing effect of the original alleged wrong.  Cf. Johnson, 943 F.2d at 108 (fact that plaintiff "suffered from the sting" of alleged wrong for may years does not justify extending the limitations period); Muniz-Rivera v. United States, 204 F. Supp.2d at 315 (in a case involving negligent construction of their homes, flooding of those homes does not constitute a new tort, but a continuing effect of original tortious act).

[14]The plaintiff attempts to cast this case as similar to O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001) where the court found the continuing violation doctrine applicable in a hostile work environment case.  The court in O'Rourke, however, was careful to distinguish sexual harassment cases from others where, as here, there was a single act or triggering event followed by long term adverse consequences of that event.  See id. at 731, 732.  Rather, the court noted that [s]exual harassment serious enough to constitute unlawful discrimination . . . is often a cumulative process rather than a one time event.  Id. at 732 (quotation omitted).

13

**IV.   CONCLUSION**

Taking as true all the plaintiff's well-pleaded facts and drawing all reasonable inferences therefrom, the plaintiff's action is untimely.  The defendant's motion to dismiss (document no. 9) is granted.  All other pending motions are denied as moot.  The plaintiff's claim is dismissed and the clerk shall close the case.

SO ORDERED.

/s/Joseph N. Laplante
Joseph N. Laplante
United States District Judge

Dated: December 31, 2008

cc:   Kenneth Joel Haber, Esq.
      Richard F. Johnston, Esq.
      Deborah B. Weissbard, Esq.